# EXHIBIT B

STATE OF NEW YORK : SUPREME COURT
COUNTY OF NIAGARA

| | |
|---|---|
| MARGARET PALUMBO and LEROY CHEEK JR.,<br>as Proposed Administratrix of the<br>Estate of LEROY CHEEK, III, Deceased | Index No. |
| | **SUMMONS** |
| Plaintiffs, | Plaintiff designates |
| vs | Niagara County as place<br>of trial. |
| COUNTY OF NIAGARA<br>Niagara County Courthouse, 3rd Floor<br>175 Hawley Street<br>Lockport, New York 14094 | The basis of venue is<br>CPLR §504 |
| | Cause of action arose in |
| NIAGARA COUNTY SHERIFF MICHAEL J. FILICETTI,<br>*in his individual and official capacity as Sheriff of Niagara County*,<br>5526 Niagara Street Extension, P.O. Box 496<br>Lockport, New York 14094 | Niagara County |

PRIMECARE MEDICAL OF NEW YORK, INC.
3940 Locust Lane
Harrisburg, Pennsylvania 17109

PRIMECARE MEDICAL, INC.
3940 Locust Lane
Harrisburg, Pennsylvania 17109

DR. ANA NATASHA CERVANTES
465 Tiburon Lane
Amherst, New York 14051

NIAGARA COUNTY SHERIFF'S DEPUTIES JOHN DOES 1-5
5526 Niagara Street Extension, P.O. Box 496
Lockport, New York 14094

Defendants.

TO THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's Attorneys within TWENTY (20) DAYS after the service of this Summons, exclusive of the day of service (or within THIRTY (30) DAYS after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

DATED:  May 25, 2023
        Buffalo, New York

**PENBERTHY LAW GROUP LLP**

By: _s/Brittanylee Penberthy, Esq._
Attorneys for Plaintiffs
227 Niagara Street
Buffalo, New York 14201
(716) 803-8402
bpenberthy@thepenlawgroup.com

2

Case 1:23-cv-00864-JLS  Document 1-2  Filed 08/22/23  Page 4 of 24

STATE OF NEW YORK: SUPREME COURT
COUNTY OF NIAGARA

MARGARET PALUMBO and LEROY CHEEK JR.,
as Proposed Administratrix of the
Estate of LEROY CHEEK, III, Deceased

                    Plaintiffs,

vs.

COUNTY OF NIAGARA
Niagara County Courthouse, 3rd Floor
175 Hawley Street
Lockport, New York 14094

NIAGARA COUNTY SHERIFF MICHAEL J. FILICETTI,
*in his individual and official capacity as Sheriff of Niagara County*,
5526 Niagara Street Extension, P.O. Box 496
Lockport, New York 14094

PRIMECARE MEDICAL OF NEW YORK, INC.
3940 Locust Lane
Harrisburg, Pennsylvania 17109

PRIMECARE MEDICAL, INC.
3940 Locust Lane
Harrisburg, Pennsylvania 17109

DR. ANA NATASHA CERVANTES
465 Tiburon Lane
Amherst, New York 14051

NIAGARA COUNTY SHERIFF'S DEPUTIES JOHN DOES 1-5
5526 Niagara Street Extension, P.O. Box 496
Lockport, New York 14094

                    Defendants.

**COMPLAINT**

Case No.:

The basis of venue is
CPLR §504

Cause of action arose in
Niagara County.

1.  Plaintiffs, above-named, by their attorneys, Penberthy Law Group, LLP, for their

Complaint against the above-captioned Defendants, alleges as follows:

**JURISDICTION AND VENUE**

3

INDEX NO. E179997/2023
RECEIVED NYSCEF: 05/25/2023

2.  This is a civil action seeking damages for constitutional violations, actionable under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution, and for New York State law claims resulting in personal injuries due to negligence, medical malpractice, and wrongful death.

3.  Venue is proper in this county as the matter involves a claim against such county, pursuant to CPLR § 504.

## PARTIES

4.  The Plaintiffs, MARGARET PALUMBO and LEROY CHEEK JR., are anticipated Administratrix of the Estate of LEROY CHEEK, III, deceased. An application for the estate has been filed prior to the commencement of this action, requesting authorization to pursue the causes of action stated herein this Complaint.

5.  Plaintiff MARGARET PALUMBO resides in Erie County, New York.

6.  Plaintiff LEROY CHEEK JR resides in the State of Alabama.

7.  The decedent, LEROY CHEEK JR, died on February 26/27, 2022, while in custody of the Niagara County Jail.

8.  Defendant Niagara County ("County") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

9.  The County and or it's Sheriff's Office at all times herein operated, managed, maintained, supervised and controlled the Niagara County Jail, which is a governmental facility of the County, and is located at 5526 Niagara Street Extension, Lockport, New York 14094.

10. Defendant Niagara County Sheriff Michael J. Filicetti ("Filicetti") was the Sheriff of Niagara County during Leroy Cheek, III's Incarceration. At all relevant times to this case, he was responsible for training and supervision of Niagara County Jail Deputies, Correction Officers,

4

and/or Personnel, as well as for creating the policies, practices, and procedures at Niagara County Jail. He is alleged to have been acting, at all times relevant to this case, in his individual capacity and under the color of law within the meaning of 42 U.S.C. § 1983.  Sheriff FILICETTI is sued in both his individual and official capacity.

11. Sheriff Filicetti, as the Sheriff of Niagara County, is responsible for the day-to-day operations of Niagara County Jail, including the promulgation, implementation and maintenance of Niagara County Jail. In his official capacity as Sheriff, he has the custody, control, and charge of Niagara Jail, and the inmates confined within.

12. Filicetti and those employed by Niagara County Sheriff's Office were responsible for the various day-to-day operations of the Niagara County Jail, and the safe keeping of inmates Filicetti and those employed by Niagara County Sheriff's Office were also responsible for the training, supervision, hiring and retention of Sheriff's sergeants, lieutenants, deputies, correction officers, and personnel engaged in the custody, safekeeping, and detention of Leroy Cheek, III during his period of custody.

13. Through at least February 27, 2022, when he was found, Plaintiff Decedent Leroy Cheek, III was in the custody of the County, under the control of Filicetti and those employed by Niagara County Sheriff's Office.

14. Niagara County Sheriff's Deputies John Does 1-5, said being Niagara County Sheriff Deputies and/or Correction Officers ("Officers"), whose identities are presently unknown, were employed by Niagara County at Niagara County Jail during Leroy Cheek, III's incarceration. They are alleged to have been acting, at all times relevant to this case, in their individual capacities and under the color of law within the meaning of 42 U.S.C. § 1983.

15. The Officers were persons engaged in the custody, care, safekeeping, and detention of Plaintiff Decedent Leroy Cheek, III.

16. Upon information and belief, Sheriff Filicetti, as the Sheriff of Niagara County, is charged by the laws of the State of New York with maintaining the Niagara County Jail, and is responsible for all conditions of confinement, health, safety and medical care and treatment of persons incarcerated herein.

17. That as "policymakers", Defendants Niagara County and Sheriff Filicetti were aware that those working at the Niagara Jail would encounter inmates with mental health disorders, prior history of self-injurious behavior, high stress and/or anxiety, and those dependent upon and withdrawing from addictive drugs or alcohol. They were also aware that those individuals were at a heightened risk of suicide and were aware that failure to make adequate provision for same could result in attempted suicide or suicide of inmates. They were further aware that the training and imposition of proper guidelines were essential to ameliorate this risk. They were also aware that the failure or inadequacy of said training would result in the deprivation of an inmate's constitutional rights.

18. Upon information and belief, Defendants Niagara County and Sheriff Filicetti contracted with a company called Primecare Medical of New York, Inc. and Primecare Medical, Inc. to provide health care services for Niagara County Jail. Said contract was entered into by Defendant Niagara County and Sheriff Filicetti by resolution of the Niagara County Legislature authorizing said contract on July 25, 2016, by resolution number CSS-043-16.

19. Upon information and belief, Primecare Medical of New York, Inc. is a domestic business corporation doing business in New York with an agent for the service of process located in Vestal, New York and providing services in the State of New York.

20. Upon information and belief, Primecare Medical, Inc., is a foreign professional corporation incorporated in Pennsylvania and authorized to do business in New York and with certain minimum contacts to New York State including providing medical services in New York State in accordance with the above contract.

21. Upon information and belief, employees of Primecare Medical of New York, Inc. and Primecare Medical, Inc. were under the supervision of the Defendants.

22. Upon information and belief, Dr. Ana Natasha Cervantes was and still is a resident of the State of New York, and was and still is Chief Psychiatrist at the Niagara Jail and an agent or employee of Primecare Medical of New York, Inc. and/or Primecare Medical, Inc., responsible for the medical care of decedent.

### STATE LAW NOTICES OF CLAIM

23. On or about April 21, 2022, a Notice of Claim was served on behalf of the Plaintiffs upon the Niagara County, Niagara County Sheriff's Office, and Niagara County Sheriff Michael J. Filicetti, in duplicate.

24. The Notice of Claim sets forth the name and post office address of Plaintiffs' attorneys, the nature of the claim, the time when, the place where, and the manner in which the claims arose, together with items of damage then known to exist.

25. New York General Municipal Law §§ 50-e and 50-h permit municipal defendants to conduct a 50-h hearing of claimants, which operates as a precondition to suit, unless waived by the municipal defendants. Defendants exercised their 50-h hearing rights.

26. At least thirty (30) days have elapsed since the service of the Notice of Claim as aforesaid, and Defendants have failed and neglected to adjust or pay the said claim.

## STATEMENT OF FACTS

27. On or about January 12, 2022, the Plaintiff Decedent Leroy Cheek, IIIs came into the custody of Defendants' County Jail as a result of an arrest, and became a pretrial detainee of the County, Filicetti, and the Niagara County Jail, to which various duties of care where then assumed by the aforesaid.

28. Upon information and belief, by January 12, 2022, or soon thereafter, staff at the Niagara County Jail became associated and familiar with Plaintiff Decedent's medical file and/or records, including the fact that he had high risk factors, mental health and potential suicidal issues.

29. Defendants consistently denied Plaintiff Decedent Leroy Cheek, IIIs appropriate medical attention in relation to his mental health.

30. Plaintiff Decedent Leroy Cheek, IIIs' serious deteriorating mental health was a condition of urgency, and one that if not appropriately treated, may result in death, degeneration, or extreme pain, which left unattended could result in further unnecessary injury, or as here, death.

31. Defendants failed to properly diagnose Plaintiff's Decedent, Leroy Cheek, III, for his mental health conditions.

32. Defendants and others in the employ or subordinates of the County and/or Filicetti failed to refer Plaintiff's Decedent to a hospital relative to and/or to administer medication to assist his mental health conditions.

33. Upon information and belief, despite the high-risk assessment of Plaintiff Decedent, the suicide threats potentially expressed, and/or the appearance of decomposition, Plaintiff Decedent was not properly examined by a physician.

34. Upon information and belief, Defendants were aware of ongoing issues involving inmate suicide attempts and failed to properly address the same.  See Sonberg v. Niagara Cty. Jail Med.

8

Dep't Head, No. 08-CV-0364S(Sr) (W.D.N.Y. 2010); Inmate Death of Harold G. Case (2012); Inmate Death of Tommie Lee Jones Jr.; Inmate Death of Daniel Pantera; Inmate Death of Jeffrey Joyes (2021).

35. Considering the prior prisoner suicide attempts and death(s), Defendants had actual knowledge that prisoners faced a substantial risk of serious harm and disregarded that risk by failing to take appropriate actions that would abate such concern.

36. After the aforementioned suicide deaths or attempts mentioned above, Defendants failed to implement satisfactory procedures, policies, and training measures to prevent further deaths.

37. Upon information and belief, County and Filicetti enacted, implemented, or enforced restrictions on access to the Jail facility for all non-personnel civilians as a result of the public health crisis caused by the Covid-19 respiratory virus.

38. The period in which no outside visitors were allowed within Niagara County Jail covered the time that Leroy Cheek, III was in the custody of Niagara County Jail, meaning that no outsiders were allowed within the facility during the time of his incarceration.

39. In addition to these restrictions related to Covid-19 on inmate access to the civilian population that applied to Plaintiff Decedent, upon information and belief, he was also placed on further restrictions that segregated him from the rest of the inmate population.

40. Upon information and belief, while in Defendants' custody and care, Plaintiff Decedent was provided and prescribed Prazosin, a blood pressure medication commonly prescribed to treat PTSD nightmares, despite knowledge that the same had side effects worsening PTSD nightmares, and ultimately causing suicidal ideations.

41. Upon information and belief, Plaintiff Decedent was prescribed and provided the Prazosin by Defendant Dr. Ana Natasha Cervantes.

9

42. Upon information and belief, Plaintiff Decedent was improperly prescribed and provided Prazosin of an improper dosage by Defendant Dr. Ana Natasha Cervantes.

43. Upon information and belief, while so incarcerated, Plaintiff Decedent while under the sole and exclusive custody of Defendants, did not receive his required medications and/or received medications that Defendants knew or should have known would cause Plaintiff Decedent's mental health to further deteriorate.

44. Defendants were or should have been aware that inmates with a prior history of self-injurious behavior and suicidal thoughts pose a heightened risk for suicide.

45. Defendants were or should have been aware that inmates with mental health disorders pose an increased risk of suicide.

46. Upon information and belief, Plaintiff Decedent had a history of self-injurious behavior, as well as suicidal ideations and suicide attempts. Defendants, as well as their employees, agents and contractors had actual and constructive knowledge of said history of self-injurious behavior, as well as suicidal ideations and suicidal attempts.

47. That despite the above knowledge, Defendants provided an improper medication and improper dosage of medication.

48. That by his symptoms and evaluations conducted by Defendants herein, Plaintiff Decedent exhibited several serious medical and mental health conditions that demonstrated an increased risk of suicide.

49. Upon information and belief, as described herein, Defendants exhibited deliberate indifference to Plaintiff Decedent's medical and mental health needs, and Plaintiff Decedent was caused to commit suicide, and suffer from physical injury, mental and emotional stress and pain and suffering.

10

Case 1:23-cv-00864-JLS   Document 1-2   Filed 08/22/23   Page 12 of 24

50. Upon information and belief, Defendants were directly warned of the suicidal inclinations of Plaintiff Decedent immediately prior to his death.

51. Upon information and belief, on February 26/27, 2022, Plaintiff Decedent succumbed to death as a result of suicide.

52. The County is charged by the Laws of the State of New York with a duty to maintain Niagara County Jail, to provide adequate supervision to prevent harm to persons housed within the facility, and to train employees, staff and/or other subordinates rendering supervision or medical/psychiatric care and treatment at the Niagara County Jail, and as such is responsible for the health and safety of those incarcerated or detained at the Niagara County Jail.

53. The monitoring requirements of inmates are promulgated in part by the Commission of Corrections, Title 9 of the New York Code of Rules and Regulations, and the Commissioner of Corrections Chairman's Memoranda, all of which were binding on Defendants, including John and/or Jane Doe(s), said being Niagara County Sheriff Deputies and John and/or Jane Doe(s), said being Niagara County Jail Personnel.

54. Upon information and belief, while Plaintiff's Decedent Leroy Cheek, III was under constant watch or constant supervision as the result of his various assessments made upon intake, Filicetti's staff and subordinates, including but not limited to John and/or Jane Doe(s), said being Niagara County Sheriff Deputies or County Jail Personnel, pursuant to General Orders of the Sheriff, New York Code of Rules and Regulations including Title 9 Part 7003, and the Commission of Correction's Memorandum of December 21, 2016 interpreting same, should have visually observed decedent without interruption at a post in close proximity to decedent, to notate every fifteen minutes in a logbook the activities of decedent for the preceding fifteen minutes, and to periodically verify signs of decedent's life, such as movement or audible speech, breathing, or

11

snoring, all of which observations were required to have been notated in the logbook, which these defendants failed to do.

55. As per internal policies of the County and Filicetti, supervision of inmates is required for those situated like Plaintiff Decedent just prior to his death.

56. While Plaintiff Decedent was in custody, the County, Filicetti, and staff and subordinates, including but not limited to Officers and Personnel, should have maintained supervision of Leroy Cheek, III, and prevented deadly harm upon his person.

57. Upon information and belief, the County and Filicetti negligently failed to train and supervise, and negligently retained officers and personnel with respect to compliance with the State, County, and Filicetti's general orders concerning housing unit supervision, assessments, mental health treatment, searches, and compliance with Title 9 of the New York Code of Rules and Regulations, including interpretive guidance of these rules by the Commission of Corrections and the Commission of Corrections' Chairman's Memoranda, all binding upon the Defendants.

58. The County and Filicetti's failures to train included failing to train said defendant officers and personnel to verify signs of life of inmates under supervision in compliance with Commission of Corrections authority and provide adequate, prompt, and appropriate mental health treatment.

59. The Defendants' failures to train contributed to said failures to verify Plaintiff Decedent's signs of life, failing to post a position adequately close to the cell of decedent, and failure to prevent suicide.

60. Upon information and belief, Defendants conducted supervisory visits of the cells, failing to inquire about, request, or undertake to verify signs of life of Plaintiff's Decedent.

61. Upon discovery of the unresponsive Plaintiff Decedent, Defendants' sought medical care, but decedent was pronounced dead at the scene.

62. The unlawful and unconstitutional acts of Defendants were the proximate cause of Leroy Cheek, III's death.

63. Plaintiff institutes the instant action for deprivation of civil rights, negligence, medical malpractice, and wrongful death, as outlined below.

64. Defendants evidenced their deliberate indifference by allowing persons suffering from a mental health episode or condition to cause himself grave harm, by failing to identify Plaintiff Decedent's need for medical care, by failing to verify signs of life periodically, and failing to maintain supervision during a time when Defendants were obligated to observe Plaintiff decedent, at a post in close proximity to Plaintiff Decedent Leroy Cheek, III while he was in his cell.

**AND AS FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF DECEDENT'S FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE AND TREATMENT, ACTIONABLE UNDER 42 U.S.C. § 1983**

65. Plaintiffs, hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs, "1" through "64," with the same force and effect as if set forth fully herein.

66. As a County detainee, Plaintiff Decedent was entitled to adequate medical care and treatment.

67. Notwithstanding the medically serious condition of Plaintiff Decedent, Defendants, being aware of decedent's deteriorating mental health, dependence, and symptoms and actions consistent with mental health issues, recklessly and with deliberate indifference ignored Plaintiff Decedent's needs, failed to monitor him despite being obligated to do the same, and recklessly took no action to summon or obtain appropriate medical assistance for Plaintiff Decedent.

68. It was with recklessness and with deliberate indifference that during the time period of restricted civilian visitation policies due to Covid-19, and while Leroy Cheek, III was placed in a specific cell, he was able to commit suicide.

13

69. Defendants acted with deliberate indifference to Plaintiff Decedent Leroy Cheek, IIIs' serious medical needs in failing to adequately address his mental health while in Defendants' custody, and failing to adequately identify his need for prompt medical attention.

70. As a result of the deliberate indifference of the Defendants, the health and status of Plaintiff Decedent was not checked on or inquired into until he was later discovered unresponsive on or about February 27, 2022, all of which proximately led to and caused his injuries and death.

71. Defendants precluded Plaintiff Decedent from appropriate due process in delaying his medical treatment.

72. Wherefore, Plaintiffs pray for judgment as herein set forth below.

**AND AS FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS COUNTY AND FILICETTI FOR MAINTAINING POLICIES, CUSTOM, AND PRACTICES CONSTITUTING DELIBERATE INDIFFERENCE IN VIOLATION OF PLAINTIFF DECEDENT'S FOURTEENTH AMENDMENT RIGHTS, ACTIONABLE UNDER 42 U.S.C. § 1983**

73. Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "72," with the same force and effect as if set forth fully herein.

74. The County and Filicetti maintained a policy, custom, or practice of deliberate indifference to the hiring, supervision, or discipline of its employees knowing that those employees would come into contact with inmates, like Plaintiff Decedent.

75. At all times mentioned herein, Defendants County, Filicetti, and their employees, were public actors, a municipality and its law enforcement/administrative arm, acting under color of state law. Officials within the County or the office of Filicetti were responsible for establishing the municipal policies relative to procuring medical care and treatment of pretrial detainees in the custody of Defendants', and/or a practice so widespread and consistent that, although not expressly authorized, constituted a custom or usage of which a supervising policymaker of the County and/or

Filicetti must have been aware, and/or the failure of policymakers of the County and/or Filicetti to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal and/or law enforcement employees, and that, as a result of the policies, customs, or practices of the County and/or Filicetti, Defendants caused the deprivation of Plaintiff's decedent's access to adequate medical care and treatment, in violation of his Fourteenth Amendment right to same, where the County and/or Filicetti, by and through their subordinates and employees, whom deliberately ignored various warnings raised by various persons that decedent was in need of immediate medical assistance while suffering from a serious medical condition or conditions, and that the County and/or Filicetti ignored the serious medical condition/s and failed to act, resulting in Plaintiff Decedent's pain and suffering, and ultimate death.

76. As a result of the policies, customs, or practices of the County and Filicetti, Defendants caused the deprivation of Plaintiff Decedent's access to adequate medical care and treatment in violation of his Fourteenth Amendment right to same.

77. County and Filicetti, by and through their subordinates and employees, ignored various warnings that decedent was in need of immediate medical assistance while suffering from a serious mental health medical condition, or conditions, resulting in Plaintiff decedent's pain and suffering, and ultimate death.

78. As a result of the policies, customs, or practices of the County and Filicetti, and through their subordinates and employees, failed in adequately screening risks of suicides.

79. As a result of the policies, customs, or practices of the Count and Filicetti, and through their subordinates and employees, failed in properly and adequately monitor Plaintiff Decedent.

15

Case 1:23-cv-00864-JLS   Document 1-2   Filed 08/22/23   Page 17 of 24

80. County and Filicetti, and through their subordinates and employees, deliberately ignored various warnings that Plaintiff Decedent was in need of immediate medical assistance while suffering from a serious medical condition, or conditions, resulting in Plaintiff decedent's pain and suffering, and ultimate death.

81. As a result of the policies, customs, or practices of the County and Filicetti, and through their subordinates and employees, failed in properly attended to Plaintiff Decedent's suicide attempt, or timely call for appropriate medical attention.

82. Wherefore, Plaintiffs pray for judgment as herein set forth below.

**AND AS FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS COUNTY AND FILICETTI FOR NEGLIGENCE IN HIRING, TRAINING, AND SUPERVISION, CONSTITUTING DELIBERATE INDIFFERENCE IN VIOLATION OF PLAINTIFF DECEDENT'S FOURTEENTH AMENDMENT RIGHTS, ACTIONABLE UNDER 42 U.S.C. § 1983**

83. Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "82," with the same force and effect as if set forth fully herein.

84. At all times mentioned herein, defendants County and Filicetti were responsible for establishing the municipal policies relative to procuring medical care and treatment of pretrial detainees in the custody of Defendants, and/or practices so widespread and consistent that, although not expressly authorized, constituted a custom or usage of which a supervising policy maker of the County and Filicetti must have been aware. The policymakers failed to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal and/or law enforcement employees.

85. County and Filicetti's deficiencies in hiring, training, and adequately supervising their employees was highly likely to inflict the particular injury suffered by the Plaintiffs.

86. As alleged herein and above, Defendants County and Filicetti failed to hire, supervise and train Officers and Personnel to adequately screen inmates at the Niagara County Jail.

87. Due to Defendants County and Filicetti's failure to hire, supervise and train Officers and Personnel, this resulted the suicide at issue of Plaintiff Decedent.

88. Defendants further maintained policies and practices insufficient to mitigate the serious risk to the safety and security of staff, inmates, and the public during serious mental health concerns. This is a known risk to the County and Filicetti.

89. As alleged herein and above, Defendants County and Filicetti failed to hire, supervise and train Officers and Personnel to adequately address an inmates' medical needs, including the issues Plaintiff Decedent suffered.

90. Identifying and adequately addressing the medical needs of inmates requires specialized training, and upon information and belief, Defendants County and Filicetti failed to hire the appropriate personnel for this role.

91. Defendants County and Filicetti, knew and/or should have known that a failure to adequately train, supervise and monitor the conduct of Officers and Personnel would likely result in unreasonable danger to inmates.

92. Wherefore, Plaintiffs pray for judgment as herein set forth below.

**AND AS FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR STATE LAW NEGLIGENCE IN FAILING TO PROPERLY TREAT DECEDENT'S MENTAL HEALTH WHILE IN THE NIAGARA COUNTY JAIL RESULTING IN INJURIES AND DEATH TO PLAINTIFF DECEDENT**

93. Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "92," with the same force and effect as if set forth fully herein.

94. Defendants, though their acts and omissions, failed to properly screen inmates to Niagara County Jail, with failures at the initial entry assessment and any period thereafter.

95. Defendants' failure to prevent suicide lead to the death of Plaintiff Decedent.

96. Defendants' failure to assess and treat Plaintiff Decedent's mental health lead to the death of Plaintiff Decedent.

97. It was through these acts and omissions that Plaintiff Decedent caused himself grave personal harm.

98. Wherefore, Plaintiffs pray for judgment as herein set forth below.

## AND AS FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS COUNTY AND FILICETTI FOR STATE LAW NEGLIGENCE UNDER NEW YORK CORRECTION LAW § 500-C

99. Plaintiffs hereby repeats and re-alleges each factual allegation contained in preceding paragraphs, "1" through "98," with the same force and effect as if set forth fully herein.

100.      Plaintiff Decedent entered the custody of County and Filicetti, on or about January 12, 2022. At that point, County and Filicetti had a duty under New York Correction Law § 500- C to safely keep and make necessary medical care available to Plaintiff Decedent.

101.      As a result of the negligent training, supervision, and retention of Officers and Personnel who worked in the Niagara County Jail, who negligently disregarded their duties, rules, and regulations in the supervision of Plaintiff Decedent, Plaintiff Decedent suffered the aforesaid injuries, and ultimately succumbed to his injuries.

102.      Wherefore, Plaintiffs pray for judgment as herein set forth below.

## AND AS FOR A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR MEDICAL MALPRACTICE

103.      Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "102," with the same force and effect as if set forth fully herein.

104.      Upon admission of Plaintiff Decedent to the Niagara County Jail, a jail that was maintained by the County and Filicetti, the aforesaid Defendants had a statutory duty, under New

York Correction Law § 501 to provide a jail physician and/or medical care and treatment to Plaintiff Decedent while he was in the custody of the County and Filicetti.

105.    Employees, independent contractors, and/or other subordinates and/or those rendering medical care to Plaintiff Decedent, including Defendants in fulfillment of the County's duty to provide medical care and treatment to Plaintiff Decedent, Defendant Dr. Ana Natasha Cervantes, Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., negligently failed to diagnose Plaintiff Decedent's mental health condition.

106.    Defendants and others in the employ or subordinates of the County, Filicetti, Defendant Dr. Ana Natasha Cervantes, Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., failed to refer Plaintiff Decedent to a hospital relative to and/or administer the appropriate treatment for this mental health decomposition.

107.    Furthermore, Defendants, and/or others in the employ and acting in furtherance of the duties of the County, Filicetti, Defendant Dr. Ana Natasha Cervantes, Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., had actual and/or constructive knowledge of Plaintiff Decedent's deteriorating mental health, failed to render adequate medical treatment, failed to refer him to a hospital, or otherwise properly monitor his condition.

108.    Defendants and/or others in the employ and acting in furtherance of the duties of Defendants jointly and/or severally failed to refer the Plaintiff Decedent to a hospital.

109.    Defendants knew or should have known that Plaintiff Decedent was experiencing a mental health crisis while confined within Niagara County Jail.

110.    Additionally, the failures of Defendants, and others in the employ or subordinates of County, Filicetti, Defendant Dr. Ana Natasha Cervantes, Defendant Primecare Medical of New

19

Case 1.23-cv-00864-JLS   Document 1-2   Filed 08/22/23   Page 21 of 24

York, Inc. and/or Defendant Primecare Medical, Inc., to refer Plaintiff Decedent to a higher level of care resulted in Plaintiff Decedent not receiving appropriate medical intervention and ultimately his death, as further evidenced, in part, by violations of 9 NYCRR § 7010.1(b), which requires prompt screening to identify serious or life-threatening medical conditions.

111.    As a result of these failures constituting medical malpractice of Defendants, and/or others in the employ and acting in furtherance of the duties of County, Filicetti, Defendant Dr. Ana Natasha Cervantes,  Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., Plaintiff Decedent was improperly and inadequately treated, and was otherwise left untreated.

112.    As a result of the joint and several failures of Defendants and others in the employ of and subordinates of County, Filicetti, Defendant Dr. Ana Natasha Cervantes,  Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., concerning the provision of medical care and treatment to Plaintiff Decedent, Leroy Cheek, IIIs was caused to die and sustain great pain and suffering and physical anguish.

113.    Upon information and belief, the County, Filicetti, Defendant Dr. Ana Natasha Cervantes,  Defendant Primecare Medical of New York, Inc. and/or Defendant Primecare Medical, Inc., engaged in a negligent practice in failing to provide and make available an appropriate jail physician, as it was statutorily obligated to, as either a matter of practice or in the instant case.

114.    Upon information and belief, Defendants, by and through their subordinates and/or physicians and other staff failed to ensure the supervision of Plaintiff Decedent, Leroy Cheek, III, resulting in his death.

115.    The County is vicariously liable for the negligence of its subordinates as set forth in the preceding paragraphs.

116.     Wherefore, Plaintiffs pray for judgment as herein set forth below.

## AND AS FOR A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR WRONGFUL DEATH

117.     Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "116," with the same force and effect as if set forth fully herein.

118.     Plaintiff Decedent left surviving his four minor children.

119.     Plaintiff Decedent's next of kin were dependent upon Decedent for support and maintenance, which they are now deprived of as a result of the aforesaid incident.

120.     As a result of the aforesaid incident, medical, funeral, and burial expenses have been incurred.

121.     By reason of Decedent's death caused by the negligence and reckless disregard of the Defendants as aforesaid, his distributes and next of kin have sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

122.     Wherefore, Plaintiffs pray for judgment as herein set forth below.

## AND AS FOR AN EIGTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR NEGLIGENT HIRING, TRIAINING AND RETENTION OF EMPLOYEES UNDER NEW YORK LAW

123.     Plaintiffs hereby repeat and re-allege each factual allegation contained in preceding paragraphs, "1" through "122," with the same force and effect as if set forth fully herein.

124.     The incident hereinbefore described and the resultant injuries and damages were caused as a result of the negligent, careless, reckless and/or unlawful conduct on the part of the Defendants, more particularly, in negligently handling Plaintiff Decedent, causing serious physical injury upon plaintiff's decedent pursuant to New York State common law.

21

125.     As alleged herein and above, Defendants failed to hire, supervise and train deputies and/or officers and/or medical professionals to adequately screen inmates at the Niagara County Jail.

126.     Due to Defendants failure to properly hire, supervise and train deputies and/or officers and/or medical professionals, this resulted the suicide at issue of Plaintiff Decedent.

127.     Defendants further maintained policies and practices insufficient to mitigate the serious risk to the safety and security of staff, inmates, and the public during serious mental health concerns.

128.     As alleged herein and above, Defendants failed to hire, supervise and train Officers and Personnel to adequately address an inmates' medical needs, including the issues Plaintiff Decedent suffered.

129.     Identifying and adequately addressing the medical needs of inmates requires specialized training, and upon information and belief, Defendants failed to hire the appropriate personnel for this role.

130.     Defendants knew and/or should have known that a failure to adequately train, supervise and monitor the conduct of Officers and Personnel would likely result in unreasonable danger to inmates.

131.     Defendants herein are negligent in failing and omitting to ensure its deputies and/or officers and/or medical professionals used appropriate care and discretion; in failing and omitting to properly and adequately instruct, supervise and train its deputies and/or officers; and in negligently hiring.

132.     Upon information and belief, Defendants affirmatively created the dangerous and defective condition described herein.

Case 1:23-cv-00864-JLS  Document 1-2  Filed 08/22/23  Page 24 of 24

133.    Wherefore, Plaintiffs pray for judgment as herein set forth below.

134.    As a result of the foregoing causes of action, Plaintiffs claim punitive damages against the Defendants in an amount that exceeds the jurisdictional requirements of all lower Courts that would otherwise have jurisdiction.

135.    This action falls within one or more of the exceptions set forth in CPLR § 1602.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:
1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For punitive damages against the individual named Defendants in their individual capacities in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
5. For any and all statutory damages allowed by law;
6. For costs of suit herein incurred; and
7. For such other and further relief as this Court deems just and proper.

**PENBERTHY LAW GROUP LLP**

DATED:    May 25, 2023
Buffalo, New York

By: _s/Brittanylee Penberthy, Esq._
Attorneys for Plaintiffs
227 Niagara Street
Buffalo, New York 14201
(716) 803-8402

23